**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Taeng Yang,

Petitioner,

v.

Nate Knutson, Warden,

Respondent.

Case No. 18-cv-14 (SRN/TNL)

**REPORT AND RECOMMENDATION**

---

Taeng Yang, OID No. 234617, MCF-Moose Lake, 1000 Lakeshore Drive, Moose Lake MN 55767 (*pro se* Petitioner); and

Peter R. Marker, Assistant Ramsey County Attorney, Ramsey County Attorney's Office, 345 Wabasha Street North, Suite 120, St Paul MN 55102 (for Respondent).

---

This matter is before the Court, U.S. Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 1), and Respondent's Motion to Dismiss Petition for Habeas Corpus, (ECF No. 8). This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the motion to dismiss be granted and the petition be dismissed.

# I. PROCEDURAL AND FACTUAL BACKGROUND

## A. State District Court

Petitioner Taeng Yang and B.H. "were united by a Hmong cultural marriage, which was arranged by their families. They have one child together, who was born in March 2013." *State of Minnesota v. Yang*, 2017 WL 474400, at *1 (Minn. Ct. App. Feb. 6, 2017).[1] "In 2015, Yang, B.H., and their child lived in a three-bedroom home that they shared with Yang's parents and Yang's siblings and their children." *Id.* B.H. did not have a driver's license and relied upon family members to transport her. *Id.*

On June 7, 2015, B.H. finished work at 8:00 p.m. and Yang picker her up "one to two hours later," then "later picked up his brother-in-law, V.V., and a friend, T.L." *Id.* The group of four arrived at Yang and B.H.'s home between 11:00 p.m. and midnight. *Id.* When they arrived, Yang and B.H.'s child was still awake and "was 'cranky' and needed a bottle in order to sleep." *Id.* "Yang told B.H. that the bottle was missing. B.H. asked Yang to take her to the store to buy a new bottle and milk. Yang and B.H. began to argue, and the argument escalated." *Id.* B.H. attempted to leave the bedroom with the child, but T.L. and V.V. blocked the door. *Id.* "Yang told B.H. to sit on the bed, but she resisted because she feared for her safety. Yang slapped B.H. on her knee with a shoe and pulled her hair." *Id.* B.H., who was holding the child, was pushed to the ground by either Yang or V.V. and Yang then "got on top of B.H. and punched her face and arms with his closed fist. Yang threatened to 'take [B.H.] to the forest and kill [her].'" *Id.* (alterations in

[1] The Minnesota Court of Appeals' opinion was provided by Respondent at Exhibit 4 to its Appendix, ECF No. 10-3, and by Yang as Exhibit A to his Memorandum, ECF No. 3-1.

original). Yang's sister opened the bedroom door and B.H. fled with the child, running to a nearby corner store. *Id.* The corner store was closed, so B.H. "hid with the child between parked cars in the parking lot, called the police, and stayed there until two officers arrived." *Id.*

Yang was charged with one count of felony domestic assault in violation of Minn. Stat. § 609.2242, subd. 4 (2014). *Id.* The State of Minnesota later amended the complaint to add one count of terrorist threats in violation of Minn. Stat. § 609.713, subd. 1 (2014). *Id.* At his first omnibus hearing, "the day that he met his appointed public defender," Yang asked the district court to appoint substitute counsel. *Id.* at *2. Yang's

> appointed counsel raised the issue with the district court by stating that Yang wished to speak to the court concerning his representation. Yang quickly described a conversation with his appointed counsel in which they had a disagreement concerning whether he was a member of a gang. The district court interrupted Yang and encouraged him to refrain from disclosing his confidential conversations with counsel. When Yang persisted, the district court stated that the request was denied.

*Id.* Yang appeared at two subsequent pretrial hearings, never renewing his request for substitution of counsel. *Id.*

Before trial, the State of Minnesota served upon Yang its intent to seek an aggravated sentence based on factors that included: "the offense was committed in the actual presence of a child; the child heard, saw, or otherwise witnessed the offense; and B.H. was particularly vulnerable due to the child's presence." *Id.* at *1. Also before trial, the State of Minnesota gave notice of its intent to impeach Yang with his prior felony convictions, including a 2013 burglary conviction. *Id.* at *4.

Yang's case was tried before a jury in September 2015. *Id.* at *2. The State of Minnesota called six witnesses: "B.H., the emergency-room nurse who treated B.H., B.H.'s treating physician, the 911 operator, and the two police officers who responded to B.H.'s call." *Id.* Yang called three witnesses: his sister, father, and mother. *Id.* Yang also attempted to call V.V. and T.L. as witnesses, but "both men asserted their Fifth Amendment rights against self-incrimination." *Id.* Yang did not testify. *Id.*

The jury found Yang guilty of both charges—felony domestic assault and terroristic threats. *Id.* The jury also found that the State of Minnesota had proved the three aggravating sentencing factors. *Id.* Yang was sentenced to 60 months imprisonment, a double-upward departure from the presumptive Minnesota sentencing guidelines range. *Id.*

### B. Yang's Appeal to the Minnesota Court of Appeals

Yang, through counsel, appealed to the Minnesota Court of Appeals. Yang's counsel raised four arguments: (1) "the district court erred by denying his pre-trial request for the appointment of a different public defender"; (2) "the district court erred by allowing the state to introduce evidence about the relationship between B.H. and him"; (3) "the district court erred by allowing the state to impeach him by introducing evidence that he was convicted of burglary in 2013"; and (4) "the district court erred by submitting the issue of guilt and the issue of aggravated sentencing factors to the jury in a unitary trial rather than a bifurcated trial." *Id.* at *2–*6; (ECF No. 10 *passim*).[2]

[2] Yang also provided a copy of his appeal, found at ECF No. 3-5.

The "thrust of Yang's [first] argument [was] that the district court erred by not making a full inquiry into his reasons for making the request for a different public defender." *Yang*, 2017 WL 474400, at *2; (ECF No. 10, at 18–22).[3] Yang asserted that, had the district court conducted a proper inquiry "which might have elicited more information," the district court "'might have determined' that exceptional circumstances exist" warranting substitution of counsel. *Yang*, 2017 WL 474400, at *2; (ECF No. 10, at 18–22). The Minnesota Court of Appeals found that the district court's inquiry was not lacking. *Yang*, 2017 WL 474400, at *3. The Minnesota Court of Appeals further found that "Yang did not raise the issue again thereafter, which indicate[d] that he acquiesced to appointed counsel's ongoing representation." *Id.* Therefore, the Minnesota Court of Appeals found that the district court did not err in denying Yang's request for substitution of appointed counsel. *Id.*

For his second argument, Yang contended that "the district court erred because the probative value of the state's relationship evidence was far outweighed by its prejudicial effect." *Yang*, 2017 WL 474400, at *4; (ECF No. 10, at 23–26). The Minnesota Court of Appeals found that the district court did not err by allowing the introduction of relationship evidence. *Yang*, 2017 WL 474400, at *4. The Minnesota Court of Appeals found the admission of the relationship evidence was justified, noting that "the relationship evidence was probative in that it helped the jury evaluate the testimony of

[3] The citations to the Appendix to Respondent's Memorandum of Law, ECF No. 10 and its subparts, refer to Respondent's overall pagination rather than the pagination of each individual document.

B.H. and the defense witnesses," and "that the district court gave the jury a limiting instruction before the evidence was presented and again before deliberations." *Id.*

For his third argument, Yang asserted the district court erred in its assessment of the probative value of impeachment evidence. *Yang*, 2017 WL 474400, at *5; (ECF No. 10, at 27–31). The Minnesota Court of Appeals held the district court did not err in its consideration under existing precedent, which permitted the use of Yang's 2013 burglary conviction as impeachment evidence. *Yang*, 2017 WL 474400, at *5.

With respect to his fourth argument, the district court granted the State of Minnesota's request for a unitary trial at the instructions conference after all evidence had been introduced. *Yang*, 2017 WL 474400, at *6; (ECF No. 10, at 32–34). Yang contended the "unitary trial was prejudicial because 'asking the jurors to consider whether the state proved aggravating factors at the same time as it is deciding whether the state proved guilt beyond a reasonable doubt encourages the jury to focus its attention on the most prejudicial evidence against the defendant.'" *Yang*, 2017 WL 474400, at *6; (ECF No. 10, at 32–34). The Minnesota Court of Appeals "recognize[d] the potential for undue prejudice in this general situation, but . . . believe[d] that the potential for undue prejudice was not realized in this case." *Yang*, 2017 WL 474400, at *6. This is because the "evidence supporting the aggravating factors (that Yang and B.H.'s child was present) was naturally part of the essential facts of the case." *Id.* Based on the testimony and evidence presented, "the jury had no particular reason to focus on the presence of the child during witness testimony." *Id.* Furthermore, the Minnesota Court of Appeals reasoned, the jury "instructions and the special verdict form asked the jury to consider

three questions related to the presence of the child only if it were to find Yang guilty." *Id.* Thus, Yang's fourth ground for appeal was rejected. *Id.*

Finally, Yang made four additional arguments in his *pro se* supplemental brief: (1) "the district court erred by preventing him from calling V.V. and T.L. as witnesses at trial"; (2) "he received ineffective assistance of counsel and that the district court erred by denying his request for substitute counsel"; (3) "the evidence is insufficient with respect to both the domestic-assault charge and the terroristic-threats charge"; and (4) "being convicted on both charges violates the Double Jeopardy Clause of the United States Constitution and state statutes protecting against multiple convictions and multiple punishments." *Yang*, 2017 WL 474400, at *6–*7; (ECF No. 10-1 *passim*).[4]

With respect to Yang's first *pro se* argument, Yang contended "that the district court violated his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor and his right to present a complete defense, which is guaranteed by the Due Process Clause of the Fourteenth Amendment." *Yang*, 2017 WL 474400, at *6; (ECF No. 10-1, at 60–61). The Minnesota Court of Appeals noted that the "district court did not prevent Yang from calling V.V. and T.L. as witnesses at trial. In fact, Yang took advantage of his right to compulsory process by serving subpoenas on both V.V. and T.L., both of whom appeared in the courtroom." *Yang*, 2017 WL 474400, at *6. Both men, however, asserted their Fifth Amendment right against self-incrimination and elected not to testify. *Id.* The Minnesota Court of Appeals indicated that a "witness's decision to invoke his constitutional right to not testify does not violate a defendant's

[4] Yang also provided a copy, found at ECF No. 3-6.

Sixth Amendment right to compulsory process." *Id.* (citations omitted). The Minnesota Court of Appeals also noted that a defendant's constitutional right to present a complete defense is violated "only if the district court excludes evidence based on an evidentiary rule that infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule is designed to serve." *Id.* (quotation and citation omitted).

Turning to Yang's second *pro se* argument, Yang argued that his "trial counsel was ineffective by not ensuring that he could call V.V. and T.L. as witnesses at trial." *Yang*, 2017 WL 474400, at *7; (ECF No. 10-1, at 61–62). The Minnesota Court of Appeals noted that "Yang does not attempt to explain how his trial counsel could have required them to testify," and found that his ineffectiveness argument was without merit. *Id.* And, as noted above, the Minnesota Court of Appeals had already found the district court's decision to deny Yang's request for substitution of counsel was without error. *Id.*

As for Yang's third *pro se* argument, Yang contended "that, with respect to the domestic-assault charge, the state did not prove the existence of a prior qualifying domestic-abuse-related conviction, as required for a felony-level conviction." *Yang*, 2017 WL 474400, at *7; (ECF No. 10-1, at 62–64). The Minnesota Court of Appeals found that "such evidence was unnecessary because Yang stipulated to having two prior qualifying domestic-abuse-related convictions." *Yang*, 2017 WL 474400, at *7. And with respect to the terroristic threats charge, the State of Minnesota did not have to prove that B.H. was injured, as Yang contended, because it is not an element of the offense. *Id.* (citing Minn. Stat. § 609.713, subd. 1 (2014)).

And with Yang's fourth *pro se* argument, the Minnesota Court of Appeals found that his "constitutional double-jeopardy argument fails because the Double Jeopardy Clause protects against successive prosecutions for the same offense, not against a single prosecution with multiple charges." *Yang*, 2017 WL 474400, at *7 (citing *United States v. Ursery*, 518 U.S. 267, 273 (1996)); (ECF No. 10-1, at 64–66). The Minnesota Court of Appeals also rejected Yang's statutory argument because "the terroristic-threats offense is not a lesser-included offense with respect to the domestic-assault offense." *Yang*, 2017 WL 474400, at *7. Likewise, the Minnesota Court of Appeals found that the district court did not "violate the statutory prohibition on multiple punishments because the district court imposed a sentence only on the domestic-assault offense and did not impose a sentence on the terroristic-threats count." *Id.* With that conclusion, the Minnesota Court of Appeals founds that Yang's *pro se* supplemental brief did not establish that he was entitled to relief. *Id.*

### C. Yang's Appeal to the Minnesota Supreme Court

Yang, through counsel, sought review by the Minnesota Supreme Court. (ECF No. 10-4). Yang presented five issues for review: (1) when must a trial court grant a criminal defendant's request for a bifurcated trial on aggravated sentencing factors?; (2) when a criminal defendant asks for a new public defender, is the trial court required to allow the defendant to make a record about his dissatisfaction with his attorney?; (3) is relationship evidence admissible where it is inflammatory and has limited probative value?; (4) is a prior conviction admissible for impeachment purposes merely because it shows disrespect for the law?; and (5) "Do the issues raised in Yang's pro se supplemental brief

warrant review?" (ECF No. 10-4, at 102).[5] With respect to the first four arguments, Yang mirrored his arguments made to the Minnesota Court of Appeals. (ECF No. 10-4, at 104–07). With respect to the fifth argument, Yang posited the following: "Yang also asks this Court to accept review of all of the issues raised in his pro se supplemental brief, and to accept the pro se supplemental petition for review, which is filed separately with an accompanying motion." (ECF No. 10-4, at 107). Yang attached a copy of the Minnesota Court of Appeals opinion to his petition for review. (ECF No. 10-4, at 109).

The same day as his petition for review, Yang also filed a "Motion for Acceptance of Pro Se Petition for Review." (ECF No. 10-5).[6] Yang moved the Minnesota Supreme Court, pursuant to Minn. R. Civ. App. P. 127, to accept his *pro se* supplemental petition for review. (ECF No. 10-5, at 110). Yang "filed a pro se supplemental brief in the court of appeals and now wishes to file a pro se supplemental petition for review of those issues raised in his pro se brief." (ECF No. 10-5, at 110). The Minnesota Supreme Court denied Yang's motion, noting that "Minn. R. Crim. P. 29.04 permits only one petition for review to be filed, and does not provide for a supplemental pro se petition for review." (ECF No. 10-6, at 111).

On April 26, 2017, the Minnesota Supreme Court denied Yang's petition for further review. (ECF No. 10-7; ECF No. 3-2).

---

[5] Yang also provided a copy, found at ECF No. 3-4.

[6] Yang also provided a copy, found at ECF No. 3-3.

### D. Federal Habeas Petition

Yang has now seeks federal habeas review. Yang raises four grounds for relief. First, Yang argues that his trial counsel's performance fell below reasonable competence in violation of his Sixth Amendment rights. (Pet., ECF No. 1, at 4). Second, Yang argues the trial court erred by depriving him a constitutional right to compulsory process of witnesses under the Sixth Amendment. (Pet., at 4). Third, Yang argues that the evidence was insufficient for felony domestic assault and terroristic threat convictions. (Pet., at 5). Fourth, Yang argues that Double Jeopardy bars multiple convictions arising from a single act or incident. (Pet., at 5). Yang's arguments mirror those he presented *pro se* to the Minnesota Court of Appeals.

Respondent moved to dismiss Yang's Petition on the grounds that his claims have been procedurally defaulted because he failed to present them to the Minnesota Supreme Court. (ECF Nos. 8, 9). Yang argues that his claims are not exhausted. (ECF No. 2, at 4–10; ECF No. 12, at 2–5).

## II. ANALYSIS

### A. Failure to Exhaust State Remedies

The Antiterrorism and Effective Death Penalty Act of 1996 governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 is used by state prisoners alleging they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state prisoner "must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To be fairly presented 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999)). However, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). Additionally, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32.

In this case, Yang raised certain claims on his direct appeal to the Minnesota Court of Appeals: (1) the denial of his request for substitution of counsel; (2) the introduction of relationship evidence; (3) impeachment via a 2013 burglary conviction; (4) simultaneous submission of the issues of guilt and aggravating sentencing factors to the jury; (5) *pro se* argument concerning compelling two witnesses to testify; (6) *pro se* argument concerning ineffective assistance of counsel and denial of substitute counsel; (7) *pro se* argument of insufficient evidence for the two convictions; and (8) *pro se* argument regarding a Double Jeopardy violation. On his appeal for discretionary review to the Minnesota Supreme Court, Yang raised five grounds: (1) simultaneous submission of the issues of guilt and aggravating sentencing factors to the jury; (2) the denial of his request for substitution of counsel; (3) the introduction of relationship evidence; (4) impeachment via a 2013 burglary conviction; and (5) his pro se brief at the Minnesota Court of Appeals.

Yang's incorporation by reference of previous briefs submitted at the lower level, without more substantiation, does not "fairly present" those claims to the Minnesota Supreme Court for review. *Foster v. Fabian*, Case No. 07-cv-4317 (JRT/JJG), 2009 WL 921063, at *8 (D. Minn. 2009) ("[A]s other Courts in this District have held, 'incorporation' of a lower court decision or briefs submitted to such a lower court, without identifying the federal issue in the petition for review, is insufficient to fairly present a federal claim for the purposes of exhaustion."); *Caradine v. Minnesota*, Case No. 15-cv-2284 (ADM/TNL), 2016 WL 616889, at *4 (D. Minn. Jan. 25, 2016) (citing *Foster*, 2009 WL 921063, at *8), *report and recommendation adopted by* 2016 WL 614390 (D. Minn. Feb. 16, 2016); *see Fraction v. Minnesota*, 678 F.Supp.2d 908, 916–

918 (D. Minn. Dec. 11, 2008). Thus, the "mere incorporation of [Yang's] supplemental brief to the intermediate court of appeals in an appendix is insufficient to fairly present the issue to the state supreme court." *Foster*, 2009 WL 921063, at *8.

A closer look at *Foster* is instructive. In *Foster*, the petitioner, on his appeal to the Minnesota Court of Appeals, raised a federal due process claim in connection to prosecutorial misconduct allegations. *Id.* at *7. The Minnesota Court of Appeals found Foster's claim unsupported and that the State of Minnesota acted within its authority. *Id.* On Foster's appeal to the Minnesota Supreme Court, "Foster did not identify the federal due process claim in his petition. Rather, Foster stated, 'Petitioner requests the Supreme Court review of all issues contained in his pro se supplemental brief to the Court of Appeals,' which was attached as an appendix to his petition." *Id.* As noted above, the "mere incorporation of Foster's supplemental brief to the intermediate court of appeals in an appendix is insufficient to fairly present the issue to the state supreme court." *Id.* at *8.

As in *Foster*, after seeking review of his four claims brought by counsel, Yang generically asked the Minnesota Supreme Court to review "all of the issues raised in his pro se supplemental brief, and to accept the pro se supplemental petition for review, which is filed separately with an accompanying motion." Neither Yang's petition for review nor his accompanying motion seeking permission to file a *pro se* supplemental petition for review included any substantive discussion of his arguments on appeal. Yang did nothing more to raise these issues to the Minnesota Supreme Court or alert it to any federal aspect of his claim, other than to make cursory references to his earlier *pro se* supplemental brief. Therefore, the only claims Yang has exhausted by fair presentation to

the Minnesota courts are his four claims brought by counsel, claims which Yang does not raise in this habeas petition. Accordingly, this Court concludes that Yang has failed to exhaust state remedies on the claims he presents in this habeas petition.

**B. Procedural Bar to Review**

If a habeas petition contains claims that have not been exhausted in the state courts, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring)). "A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Thus, "a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Clemons*, 381 F.3d at 750 (citing *Murray v. Carrier*, 477 U.S. 478, 493–96 (1986)).

For the federal court to enforce a state procedural bar, it must be clear that the state court would hold the claim procedurally barred. *Clemons*, 381 F.3d at 750. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merit of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). Minnesota law provides that once

the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). "Claims are considered 'known' [under the *Knaffla* rule] if they were available after trial and could have been raised on direct appeal." *Vann v. Smith*, Case No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006)).

Here, Yang's instant federal habeas claims all relate to his trial: the performance of his trial counsel, the testimony sought from two witnesses, the sufficiency of the evidence, and the convictions themselves. Yang in fact raised all these claims in the Minnesota Court of Appeals via his *pro se* supplemental brief. The Minnesota Court of Appeals addressed Yang's *pro se* arguments, ultimately rejecting them. This indicates that such claims were known by Yang and his appellate counsel at the time of his direct appeal and, thus, could have been presented to the Minnesota Supreme Court. Notably, Yang does not challenge the effectiveness of his appellate counsel who did not raise Yang's *pro se* arguments. Under Minnesota's postconviction rules, Yang would not be permitted to bring his current claims. Therefore, Yang is procedurally barred from bringing such claims in this federal habeas petition.

Moreover, a "claim has not been fairly presented to the state courts when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law." *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994). Thus, the Minnesota Supreme Court's denial of Yang's motion to submit a supplemental *pro se*

petition for review does not relieve his procedural default. *See, e.g.*, *Rivera v. King*, Case No. 10-cv-3954 (RHK/FLN), 2011 WL 4458729, at *6 (D. Minn. Aug. 12, 2011) (finding that a claim in an unaccepted *Pro Se* Supplemental Petition for Review to the Minnesota Supreme Court was unexhausted); *Blevins v. Dept. of Corr.*, Case No. 13-cv-2796 (PAM/SER), 2014 WL 4966910, at *11–*12 (D. Minn. Oct. 3, 2014) (same).

**C. No Cause or Prejudice Excuses Procedural Default**

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness remains the central concern of the writ of habeas corpus.'" *Id.* at 393 (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). "This rule is nearly absolute, barring procedurally-defaulted petitions unless a habeas petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence." *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (internal citations and quotation omitted); *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012); *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). If a prisoner fails to demonstrate cause, the court need not address prejudice. *Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir. 1996).

To obtain review of a defaulted constitutional claim, "the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Some examples of factors external to the defense which prevent a petitioner from developing the factual or legal basis of a claim are interference by the state, ineffective assistance of counsel, conflicts of interest, and legal novelty." *Mathenia v. Delo*, 99 F.3d 1476, 1480–81 (8th Cir. 1996). Ineffective assistance of counsel claims generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488–89.

Yang does not claim actual innocence, does not assert that the State of Minnesota has interfered with his claims in some way, or that his claims were novel. Nor does Yang assert claims of ineffective assistance of counsel as to his appellate counsel, only as to his trial counsel. Yang's appellate counsel presented four separate claims for review to both the Minnesota Court of Appeals and Supreme Court. This Court, absent some allegation by Yang, will not *sua sponte* second-guess the effectiveness of his appellate counsel because "[i]t is likely that most of the attorneys appointed by the courts are qualified to perform, and do perform, according to prevailing professional norms; and, where that is so, the States may enforce a procedural default in federal habeas proceedings." *Martinez*, 132 S.Ct. at 1319. Therefore, this Court finds Yang has not shown cause that would excuse his procedural default of the claims presented in his habeas petition.

**D. Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing § 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Federal district courts may not grant a certificate of appealability unless the prisoner "has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the petitioner must show "that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, this Court concludes that it is unlikely that reasonable jurists would find the question of whether to dismiss Yang's petition debatable, or that some other court would decide this petition differently.[7] This Court therefore recommends that a certificate of appealability not issue.

[7] While not reaching the merits of Yang's claims, this Court is highly doubtful any of his claims for relief would survive scrutiny. Yang's claims in this federal habeas petition mirror those of his *pro se* claims considered and rejected by the Minnesota Court of Appeals. With respect to Ground Two, "[i]t is well settled that an accused's right to compulsory process must yield to a witness's Fifth Amendment privilege not to give testimony that would tend to incriminate him or her." *United States v. Blaylock*, 421 F.3d 758, 770 (8th Cir. 2005) (quoting *United States v. Habhab*, 132 F.3d 410, 416 (8th Cir. 1997)). As for Ground Three, it is unlikely Yang can show that "'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt,'" *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)), where "Yang stipulated to having two prior qualifying domestic-abuse-related convictions" and the State of Minnesota "did not need to prove an actual injury because that is not an element of the offense," *Yang*, 2017 WL 474400, at *7. Turning to Ground Four, while the Double Jeopardy Clause prohibits the government from punishing twice for the same offense, *United States v. Ursery*, 518 U.S. 267, 273 (1996), Yang was not punished twice for the same offense where his conduct gave rise to two separate offenses. Moreover, Yang was sentenced just on his domestic assault offense. And for Ground One, Yang's ineffective assistance of trial counsel claim would fail because it rests on Yang's compulsory process and sufficiency of the evidence arguments which lack merit.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondent's Motion to Dismiss Petition for Habeas Corpus, (ECF No. 8), be **GRANTED**.
2. The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 1), be **DISMISSED WITH PREJUDICE**.
3. A certificate of appealability not issue.

Date: June 12, 2018

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Yang v. Knutson*
Case No. 18-cv-14 (SRN/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).